IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:09cv423

| | |
|---|---|
| JERRY ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) MEMORANDUM OF DECISION |
| | ) AND ORDER |
| | ) |
| CALDWELL COUNTY SHERIFF'S OFFICE; *et. al.*, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on the Defendants Caldwell County Sheriff's Office, Jones, Stafford, Bennett, Hartley, Brackett and Pyle's Motion to Dismiss [Doc. 38].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider the motion and to submit recommendations for its disposition.

On September 16, 2010, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended granting in part the Motion to Dismiss. [Doc. 54]. The Plaintiff timely filed objections to portions of that

recommendation. [Doc. 46].

## PROCEDURAL HISTORY

On February 16, 2009, the Plaintiff brought an action in state court against Defendants Caldwell County Sheriff's Office, Sheriff Alan Jones, Deputy Sheriff Jeffrey Stafford, Deputy Sheriff Brian Bennett, Deputy Sheriff Shelly Hartley, and Deputy Sheriffs John and Jane Doe (the County Defendants). [Doc. 1, at 14]. The Plaintiff voluntarily dismissed that state court action on March 20, 2009. [Id.].

The Plaintiff initiated this federal court action on November 20, 2009. [Doc. 1]. On January 6, 2010, the Plaintiff amended his Complaint in order to add Deputy Sheriff Christopher Brackett (Brackett), Deputy Sheriff Tracy Pyle (Pyle) and Doe Bond Company as defendants. [Id.]. On May 3, 2010, the Plaintiff was granted leave to file a Second Amended Complaint substituting Fidelity and Deposit Company of Maryland and The Ohio Casualty Insurance Company (the Bond Defendants) as defendants in lieu of Doe Bond Company. [Doc. 30].

The Second Amended Complaint was filed on May 14, 2010. [Doc. 31]. The Plaintiff has alleged claims pursuant to 42 U.S.C. §1983 for false arrest, malicious prosecution, unlawful seizure, fabrication of evidence, failure to investigate, failure to adequately train and supervise, and due process and

2

Fifth Amendment violations. [Id.]. He also alleged state law claims for malicious prosecution, intentional infliction of emotional distress, false imprisonment, obstruction of justice, negligence and bond violations. [Id.]. The County Defendants moved to dismiss for failure to state claims on which relief may be granted. [Doc. 38]. The Bond Defendants filed answer to the Second Amended Complaint but did not separately move to dismiss. [Doc. 44].

On September 16, 2010, the Magistrate Judge issued a Memorandum and Recommendation addressing the County Defendants' motion to dismiss. [Doc. 54]. The Plaintiffs filed objections to portions of the recommendation. [Doc. 55]. On November 2, 2010, the Plaintiff moved for leave to amend the Complaint a third time in order to more specifically state the claim for intentional infliction of emotional distress. [Doc. 58]. That motion was later withdrawn. [Doc. 134, 149]

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d

1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007), *certiorari denied* 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original).

Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of [the] entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Id. In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622.

4

The County Defendants have moved to dismiss for failure to state claims on which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), *quoting* Twombly, 550 U.S. at 570.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing

5

> court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Id., *quoting* Twombly, 550 U.S. at 555, 557 and Iqbal, 129 S.Ct. at 1950.

## ALLEGATIONS OF THE AMENDED COMPLAINT

The Plaintiff did not object to the Magistrate Judge's recitation of the factual allegations contained within the Second Amended Complaint. In short, it is alleged that the Plaintiff's wife, Emily Anderson, was reported as missing on December 29, 2005. Her body was found on January 7, 2006 in South Carolina stuffed in a tool box in the bed of her pick-up truck. She had died from two gunshot wounds to her torso.

On that same day, the Plaintiff was arrested and charged with his wife's murder. He was subsequently indicted by a state grand jury and charged with first degree murder. On July 20, 2007, after over a month of trial, the jury was unable to reach a unanimous verdict and the state court judge declared a mistrial. On November 27, 2008, the state prosecutor dismissed the charges without prejudice.

Other portions of the complaint are specifically referenced herein in

connection with the discussion of the Plaintiff's objections.

**RECOMMENDATIONS TO WHICH NO OBJECTIONS WERE MADE**

The followings recommendations by the Magistrate Judge have not been disputed by the Plaintiff and therefore, these claims will be dismissed.

The Plaintiff conceded that to the extent he asserted claims against the Defendants based on the Fifth Amendment in the First, Second, Third and Fifth Claims of the Second Amended Complaint, those claims should be dismissed. [Doc. 47, at 8 n.1]. As a result, all Fifth Amendment claims asserted in those counts will be dismissed as to all Defendants.

In each of the five claims asserted in the Second Amended Complaint, the Plaintiff alleged Fourteenth Amendment due process violations in the course of the investigation and in his arrest, indictment and prosecution based on less than probable cause. The Magistrate Judge recommended dismissal of such claims because "the Supreme Court has rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996). No objection to this recommendation was filed by the Plaintiff and, having conducted a careful review thereof, it is adopted.

Although the Plaintiff did not affirmatively caption any claim as based on civil conspiracy, he used the word "conspiracy" in the body of the Second

7

Amended Complaint. The County Defendants moved to dismiss any claim based on civil conspiracy pursuant to §1983 or common law. The Magistrate Judge correctly recommended the dismissal of any such claims because no factual allegations were made which would support such a claim. The Plaintiff did not object and, having conducted a careful review, the Court adopts that recommendation.

**RECOMMENDATIONS TO WHICH OBJECTIONS WERE MADE**

**Dismissal based on the statute of limitations.**

Defendants Brackett and Pyle moved for summary judgment dismissal based on the statute of limitations only as to the false arrest claim. The Magistrate Judge recommended that *all* claims against Defendants Brackett and Pyle be dismissed because they are *all* barred by the statute of limitations. Plaintiff objected, arguing that the claims other than the false arrest claim should not be dismissed because: first, the Defendants did not so move; and second, the statute of limitations did not run as to the other claims stated against those two defendants. The Plaintiff did not object, however, to the recommendation that the false arrest claim be dismissed because of the expiration of the statute of limitations. Based thereon and having conducted a careful review, the Court agrees that the false arrest claims based on §1983 and common law should be dismissed as to Defendants Brackett and Pyle.

As to the other claims against Defendants Brackett and Pyle, the Defendants concede that the Plaintiff's objection is of merit, noting that

> [a]lthough Defendants Brackett and Pyle only requested ... the dismissal of the false arrest claims against them, Judge Howell determined that it was appropriate to dismiss all claims against them on statute of limitations grounds. Defendants Brackett and Pyle have no objection to the District Court making a similar finding *if it is deemed appropriate*.

[Doc. 57, at 4 n.1] (emphasis provided).

The Defendants thus concede they did not move for dismissal of any other claims based on the statute of limitations. The Court therefore will not address the issue since the Plaintiff has not had an opportunity to respond to a motion for such relief. For that reason the motion to dismiss, to the extent that it may extend to the other claims against Defendants Brackett and Pyle (i.e. claims other than false arrest), will be denied.

**Dismissal of the §1983 malicious prosecution claims.**

In the Second Claim for Relief of the Second Amended Complaint, the Plaintiff has alleged a claim pursuant to §1983 for malicious prosecution. In this regard, the Fourth Circuit has held that "[w]hat we termed a 'malicious prosecution' claim ... is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution - specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." Lambert v. Williams, 223 F.3d 257, 261-62

9

(4th Cir. 2000), *certiorari denied* 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001).

> While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure. ... [T]he significance of the favorable termination element is not only that *it constitutes a prerequisite for recovery*, but also that it establishes the time from which the claim accrues for purposes of determining whether the statute of limitations has run.

Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009), *certiorari denied* 130 S.Ct. 2073, 176 L.Ed.2d 415 (2010) (emphasis in original).

The Fourth Circuit therefore recognizes a Fourth Amendment claim for wrongful seizure that incorporates the elements of the analogous common law tort of malicious prosecution. Id. Moreover, the precedents on which Snider is based, date from as early as 1996. Id., *citing* Lambert, 223 F.3d at 261-62; Brooks, 85 F.3d at 178; *accord,* Gantt v. Whitaker, 57 Fed.Appx. 141, 146 (4th Cir. 2003). "In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, [it is] required that the *defendant* have 'seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor.'" Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005), *quoting* Brooks, 85 F.3d at 183-84. (emphasis in original).

The Magistrate Judge's recommendation was limited to the dismissal of any malicious prosecution claim brought pursuant to §1983 which was grounded on any claim other than a Fourth Amendment seizure. Indeed, the Defendants' motion was so limited. [Doc. 39, at 9-10]. The Plaintiff has objected only to the recommendation, if any, that his claim pursuant to the Fourth Amendment be dismissed. The Court has reviewed the Magistrate Judge's recommendation and finds it is limited to any claim brought by the Plaintiff pursuant to §1983 for malicious prosecution unrelated to the Fourth Amendment seizure claim. As such, Plaintiff's objection does not address the recommendation that the Magistrate Judge had made as to the malicious prosecution claim. Therefore, Plaintiff's §1983 claim for malicious prosecution pursuant to common law will be dismissed, but Plaintiff's §1983 claim for malicious prosecution under the Fourth Amendment will not.

**Testimonial immunity.**

In the §1983 claims, the Plaintiff variously alleges that the Defendants caused him to be indicted, arrested and prosecuted based on information unsupported by probable cause. He also alleges that the Defendants fabricated evidence. The County Defendants moved to dismiss any claims arising out of their testimony before the grand jury and/or at trial, claiming absolute immunity. The Magistrate Judge noted that "[t]o the extent that any

11

claims asserted by plaintiff arise out of testimony before the grand jury or at trial, they should be dismissed as the officers enjoy absolute immunity from civil liability as to such testimony." [Doc. 54, at 20].

The Plaintiff objects, noting that he

> has not sued for "perjury," and has not based his claims on the testimony of the defendants, on which they could claim absolute immunity. Nevertheless, in the event that the Magistrate Judge is recommending that the false information defendants provided in seeking the indictment and prosecution of plaintiff [not] be used to support any subsequent determination of probable cause, plaintiff respectfully objects.

[Doc. 55, at 18].

Based on this qualification by the Plaintiff as to his objection, the Court finds that the Plaintiff has conceded he does not base any claims on testimony provided by the Defendants before the grand jury or at trial. As a result, any such claims will be dismissed. The Court does not read the Magistrate Judge's recommendation or the Defendants' motion on which it is based as relating to any other issue.

**The §1983 official capacity claims based on failure to train and supervise.**

The Plaintiff alleges in the Fifth Claim for Relief that the Defendant Sheriff and the deputies are liable in their official capacities for a failure to

train.[1] That failure is shown, he argues, by the allegations that the deputies improperly removed the truck containing Emily Anderson's body by tow truck from the crime scene prior to an official crime scene investigation. [Doc. 31, at 11]. Once removed, instead of impounding the truck at the Sheriff's Department, the deputies allowed it to remain in the garage of the owner of the tow truck. [Id.]. The removal of the truck was done without proper photographing, testing or documentation of the contents and condition of the truck prior to and immediately after removal. [Id.]. Moreover, once located inside the garage, it was the owner of the tow truck, allegedly under the direction of the deputies, who discovered the body by opening the tool box while not wearing protective gloves or other clothing designed to prevent crime scene contamination. [Id.]. Once the body was discovered, the deputies removed the tool box from the truck, forced open the lid, removed the body from the box, placed it on a sheet, removed clothing from the body, failed to document the disposition of that clothing, removed hair from inside the truck without documentation and failed to collect fingerprint evidence from inside the truck.[2] [Id., at 11-12]. It is also alleged that the Defendants failed to

---

[1]Although the claim refers generally to "Defendants," the Court agrees with the Magistrate Judge's conclusion, to which no objection was made, that the claim actually refers to Sheriff Jones and Captain Stafford who had supervisory responsibility.

[2]Specifically, Plaintiff points to an envelope found empty inside the truck. Plaintiff asserts that his wife had placed more than $1000 in the envelope to pay farm laborers,

13

properly investigate reports that Emily Anderson had been seen alive in South Carolina in the days after she went missing and Defendants also failed to retrieve a pair of prescription glasses from a hotel in South Carolina which could have been tested for identification as hers.[3] [Id., at 8-12, 15-16]. The Plaintiff also alleged that the Defendants used an improperly credentialed and unqualified cadaver dog handler. [Id., at 19-22]. Each of these improper acts and omissions, the Plaintiff alleges, could have either (1) shown that he was not the offender since the victim was alive after he reported her missing and/or (2) provided evidence of the actual murderer.

The failure to train officials can result in liability under §1983 when that failure shows a "deliberate indifference" to the rights of citizens and the identified deficiency in the training program is closely related to the injury at hand. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

> Additionally, a plaintiff must show a "direct causal link" between "a specific deficiency in training and the particular violation alleged." ... [A] plaintiff must demonstrate specific training deficiencies and either (1) that inadequately trained employees engaged in a pattern of unconstitutional conduct, or (2) that a violation of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle

---

thus pointing to theft as a motive for the murder.

[3] It is undisputed that during the same time the Plaintiff remained in North Carolina.

recurring situations."

Hill v. Robeson County, N.C., 733 F.Supp.2d 676, 686-87 (E.D.N.C. 2010), *citing* Harris, 489 U.S. at 391; Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 407-09, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (other citations omitted).

The Plaintiff has identified specific training deficiencies which resulted in the alleged mishandling of the investigation. As noted above, he has also alleged a direct causal connection between the deficiency and the injury to him. It can reasonably be inferred from the allegations made that the need for more or different training was so obvious that the County Defendants were deliberately indifferent to the need. Id.; Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (liability may attach through an omission such as failure to train officers that manifests deliberate indifference to rights of citizens). The Court finds, at least at this stage of the litigation, that the Plaintiff has stated a claim for failure to train and therefore respectfully disagrees with the Magistrate Judge.

In the Second Amended Complaint, it is alleged that Defendant Jones succeeded Sheriff Clark as Sheriff of Caldwell County.[4] [Doc. 31, at 3]. Defendant Stafford was a Captain in the Criminal Investigations Division and

---

[4]Sheriff Clark died in February 2007. [Id.].

the lead investigator of the homicide. [Doc. 31, at 3, 13]. Defendants Stafford and Pyle were the officers on the scene when the truck was located, transported back to Caldwell County, and placed in the private garage. [Id., at 7-13]. They were also present or nearby when the body was discovered. [Id.]. It was these officers who removed the body from the tool box, removed clothing and processed the truck. [Id.]. Although Stafford was told that a pair of glasses had been found in the hotel where Emily Anderson had been seen, he did not retrieve them to ascertain whether they belonged to her. [Id., at 15-16]. Stafford engaged the services of a dog handler without verifying his true identity.[5] [Doc. 31, at 20]. In fact, the handler gave Stafford a false name and did not provide any documentation of his identity, qualifications, or credentials. [Id., at 20-21]. Moreover, Stafford did not request the same. [Id.]. During the cadaver search, the handler and Stafford failed to make a video recording of the event. [Id.]. When it was later discovered that the event had not been recorded, they re-enacted the test in order to record it, thus fabricating evidence. [Id.]. Stafford, and the other Defendants, provided the fabricated re-enactment to the state prosecutor without explaining that it was not the actual test thus allowing the prosecutor to present fabricated evidence to the

---

[5]It was later learned that this individual had actually provided a false identity to the Sheriff's Department.

jury. [Id.]. Stafford discussed with Sheriff Clark the investigation and on-going developments and Clark on more than one occasion provided briefings about the case to the media. [Id., at 14, 17, 22].

Supervisory officials may be held liable for constitutional injuries inflicted by their subordinates. Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001), *certiorari denied* 535 U.S. 954, 122 S.Ct. 1357, 152 L.Ed.2d 353 (2002). Such liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Id., *quoting* Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). In order to establish supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Baynard, 268 F.3d at 235.

The Court again respectfully disagrees with the Magistrate Judge's recommendation. The allegations of the Second Amended Complaint allege

sufficient facts from which it may be inferred that Clark and Stafford had actual and constructive knowledge of conduct which constituted a constitutional injury, there was both deliberate indifference to that conduct and tacit authorization thereof or involvement therewith, and there is an affirmative link between the two. Jennings v. University of North Carolina, 482 F.3d 686, 701 (4th Cir. 2007), *certiorari denied* 552 U.S. 887, 128 S.Ct. 247, 169 L.Ed.2d 147 (2007) (supervisor had actual knowledge of misconduct and response was so inadequate as to show deliberate indifference or tacit authorization). This complaint "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949. The Plaintiff has demonstrated more than "a sheer possibility that a defendant has acted unlawfully." Id. He has "articulate[d] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Giacomelli, 588 F.3d at 193.

**The claim for infliction of emotional distress and motion to amend.**

On June 13, 2011, the Plaintiff moved to dismiss his seventh claim for relief alleging intentional infliction of emotional distress and for leave to withdraw his pending motion to amend the complaint (Doc. 58) in order to restate that claim. [Doc. 134]. Those motions were both allowed and as a result, any discussion here is moot.

**CONCLUSION**

In conclusion, it bears noting that despite continued vigorous litigation of this action, the parties' mediator recently reported that although they reached an impasse during the mediation on March 15, 2011, he "declared a recess and the mediation shall be held open." [Doc. 86]. The mediator thus reported that an additional opportunity to explore settlement was available. Should such an opportunity be desired by the parties, they should seek the same sooner rather than later in order to avoid unnecessary expenditures of judicial and legal resources.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants Caldwell County Sheriff's Office, Jones, Stafford, Bennett, Hartley, Brackett and Pyle's Motion to Dismiss [Doc. 38] is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

(1) All claims against all Defendants based on the Fifth Amendment as stated in the First, Second, Third and Fifth Claims for Relief in the Second Amended Complaint are hereby **DISMISSED**;

(2) All claims against all Defendants based on Fourteenth Amendment due process violations in prosecuting the Plaintiff on less than probable cause are hereby **DISMISSED**;

(3) All claims against all Defendants based on conspiracy are hereby **DISMISSED**;

(4) The claims against Defendants Brackett and Pyle based on false arrest pursuant to 42 U.S.C. §1983 and/or common law are hereby **DISMISSED**;

(5) All claims against all Defendants for malicious prosecution pursuant to 42 U.S.C. §1983 based on any constitutional right other than Fourth Amendment seizure claims are hereby **DISMISSED**;

(6) All claims against all Defendants based on grand jury or trial testimony are hereby **DISMISSED**;

(7) The motion to dismiss the claims pursuant to 42 U.S.C. §1983 for failure to train and/or supervise is hereby **DENIED**.

(8) Except as otherwise specifically granted herein, the Defendant's Motion to Dismiss [Doc. 38] is hereby **DENIED**.

Signed: July 12, 2011

Martin Reidinger
United States District Judge